### 4.12 Method of Clearing

Wells Fargo will choose the agent and/or method for clearing original physical Checks, including conversion into an image or reconversion into a Substitute Check where permitted by Law. Check images and Substitute Checks submitted under Dollar cash letter Services must meet all industry standards for quality and format, including, as appropriate, standards established by the American National Standards Institute, the Board of Governors of the Federal Reserve System, and clearinghouse rules, and must be sufficient for Wells Fargo to comply with all Check 21 requirements when creating a Substitute Check. Any Checks submitted to Wells Fargo under cash letter Services are subject to the transfer and presentment warranties under the Uniform Commercial Code and Regulation CC adopted by the Board of Governors of the Federal Reserve System of the US. Checks that Correspondent writes or deposits may be automatically processed and/or converted into electronic images (truncated) during the Check collection and return process, and to the extent that Correspondent fails to follow the instructions that Wells Fargo provides in order to insure that critical data is imprinted on the Check, Wells Fargo will not be liable for the failure of critical data printed or written on the Check to survive truncation or to survive the use of check carriers.

### 4.13 Deposit Preparation for Security, Retrieval, Accurate Credit

Wells Fargo is not responsible for any loss related to cash letters for which deposit tickets are missing or improperly completed. Wells Fargo will not be liable for the use of any incorrect foreign exchange rate listed on Correspondent's Foreign Currency Cash Letter deposit ticket.

Correspondent must maintain appropriate records of the front and back of each Check deposited to enable prompt reconstruction of documents in the event of loss or damage in transit or transmission. For Checks that are transmitted to Wells Fargo through the use of image cash letter Services Correspondent has sole responsibility to safe keep and/or destroy each original Check that is used to create the images and MICR information. The original Check associated with each image transmitted to Wells Fargo should be retained by Correspondent in a secure fashion for a period of time determined by Correspondent through consultation with its legal counsel and a review of Correspondent's needs. All Checks should be stored and secured at all times to prevent inappropriate access. Those files which Correspondent's policies and procedures deem inactive should be stored at a secure facility and catalogued with a retention date to permit orderly retrieval. Stored records should undergo a periodic review to determine an appropriate destruction schedule. Checks, upon destruction, must be destroyed using a mechanism that ensures complete destruction of the original.

### 4.14 Endorsement

Wells Fargo requires Correspondent to protect against unauthorized negotiation by properly and legibly endorsing all Checks deposited through cash letter Services. The endorsement should be placed in black or dark ink on the back of each Check. Wells Fargo recommends the following endorsement format:

PAY TO THE ORDER OF WELLS FARGO BANK, N.A.
ALL PRIOR ENDORSEMENTS GUARANTEED
FOR [insert Correspondent name]
Correspondent's Complete Account Number
REF #: _____

Optional information may be included provided the inclusion of such information does not interfere with the readability of the endorsement. If an alternate Account number, other than the original Account to which the deposit was made, is to be used for return Check processing, such instructions and the alternate Account number must be included on the endorsement of each Check. Wells Fargo will employ commercially reasonable efforts to follow Correspondent's instructions in debiting returned Checks to Correspondent's alternate Account.

### 4.15 Cash Letter Total Adjustments

Cash letters will be credited for the amount indicated on the deposit ticket. Errors in the calculation of the total value of the deposit will be separately adjusted by debiting or crediting the Account under advice. Correspondent is responsible for reimbursing Wells Fargo for the amount of any claims for adjustments related to Checks credited to Correspondent's Account. Such amounts will be charged back to Correspondent's Account, even if they create an overdraft, and are immediately due and payable by Correspondent to Wells Fargo. Correspondent may elect to receive automatic SWIFT/telex advices for adjustments of any amount in addition to their inclusion on Correspondent's Account statements.

### 4.16 Dollar and Foreign Currency Check Collection

At its sole discretion, Wells Fargo provides Dollar and foreign currency Check collection Services. Any Check received for collection will not be credited to Correspondent's Account unless and until Wells Fargo has received payment for the Check. Wells Fargo will, as agent for Correspondent, send such Checks through its customary collection channels. All fees associated with the collection of Checks will be deducted from the proceeds of the transaction prior to credit to Correspondent's Account. Checks are collected under prevailing Law and applicable clearing and return rules.

### 4.17 Return Check Processing

Correspondent acknowledges that all deposited Checks are credited with recourse and subject to return in accordance with applicable Law and clearing and return rules of the location in which the payor bank is operating. When any Check in whatever currency for which Correspondent has received credit in Correspondent's Account is returned to Wells Fargo with a claim for refund or other damages for any reason, including, but not limited to, alteration, forged or unauthorized endorsement, or otherwise not properly payable, or for which a warranty claim is made, Wells Fargo will, without notice, debit any Account, whether demand deposit or otherwise, of Correspondent for the amount of such claim. Any returned Check payable in foreign currency will be debited using Wells Fargo's then current selling rate for the applicable foreign currency. Wells Fargo will provide advice by authenticated SWIFT or tested telex of any unpaid Check. Wells Fargo will not automatically redeposit any returned Check under any circumstance in the cash letter Services. Any Check returned may be returned as an original physical Check or in the form of a Substitute Check or image, wholly at the discretion of the drawee bank and/or Wells Fargo.

## Part 5: Trade Services

### 5.1 Letters of Credit

Wells Fargo provides letter of credit Services in accordance with UCP600, and the International Standby Practices, International Chamber of Commerce Publication Number 590 or any subsequent revision or restatement thereof which may be adopted by the International Chamber of Commerce and accepted by Wells Fargo for use. All letter of credit charges and associated assessments will be accumulated and charged to Correspondent's Account, unless otherwise indicated, on the date of payment/acceptance or at expiration. Communications regarding letters of credit will be via authenticated SWIFT or tested telex, or by original letter of credit mailed via courier and authenticated by Security Procedures approved by Wells Fargo.

### 5.2 Bank-to-Bank Reimbursements

Wells Fargo only provides reimbursement Services in accordance with URR725. Authorizations, Amendments, and Claims can be sent via authenticated SWIFT, tested telex, courier or through the mail. Correspondent agrees that notwithstanding anything to the contrary provided in any Authorization or Amendment received by Wells Fargo from Correspondent all will be subject to URR725. Correspondent's transmission to Wells Fargo of Authorizations and Amendments even though they do not specify whether or not URR725 applies will constitute Correspondent's agreement that URR725 must apply to such Authorizations and Amendments. Wells Fargo is not responsible for authenticating any Claim received. Correspondent agrees that Wells Fargo may act upon a Claim received by Wells Fargo without any responsibility or liability on Wells Fargo's part for the authenticity of such Claim.

### 5.3 Documentary Collections

Wells Fargo at its sole discretion acts as collecting bank for documentary collections. Irrespective of any language to the contrary in, or the absence of any provision in, any collection letter received from Correspondent, all documentary collections are subject to URC522. Each Item presented for collection if required must be endorsed in accordance with the provisions set forth in Part 4 hereof. When any collection Item is returned to Wells Fargo with a claim for refund because it bears an alteration, a forged or unauthorized endorsement, or is otherwise not properly payable, Wells Fargo reserves the right to either charge Correspondent's Account for the amount of such claim or otherwise recover from Correspondent the amount Wells Fargo deems to be the Obligation due to such claim.

### 5.4 Export Bill Receivables

Wells Fargo may provide export bill receivables Services upon Correspondent's request. When Correspondent forwards export bill receivables for payment, it appoints Wells Fargo as its agent for the purposes of presentation of documents and

reimbursement claims, tracing for, and receipt of funds under letters of credit and documentary collections. When acting as Correspondent's agent, Correspondent acknowledges that Wells Fargo is not a party to the underlying transactions and therefore is not subject to any International Chamber of Commerce rules. Wells Fargo is not responsible for authenticating any reimbursement claim or export documents received from Correspondent when Wells Fargo undertakes export bill receivables Services. Wells Fargo agrees to deliver a claim or documents received from Correspondent promptly to the reimbursing or paying bank to enable Correspondent to obtain payment or acceptance. Wells Fargo will provide Correspondent with updates on outstanding transactions upon receipt of status information from the paying or reimbursing banks. Status updates are delivered to Correspondent via pre-approved means (SWIFT, telex or Web based systems) without any responsibility or commitment on Wells Fargo's part.

## Part 6: Courier Services

### 6.1 General Provisions

Wells Fargo may arrange courier services from third party vendors for trade and Services related to Items offered by Wells Fargo requiring delivery of physical documents. When arranging for any courier service: (i) Wells Fargo assumes no responsibility for Packages with respect to pick-up or while en route including, but not limited to, security delays and customs clearance, or to or from Wells Fargo's designated operations center; (ii) Wells Fargo is not responsible for the actions, omissions and/or negligence of the courier with respect to failure to pick up the Package or loss of the Package or damage to its contents while in the possession of courier, or any late delivery or non-delivery of the Package; (iii) Wells Fargo may authorize a courier to choose an alternate means of carriage or route on a temporary basis without first consulting Correspondent and such action will not alter the limitation of Wells Fargo's liability; (iv) Wells Fargo will not be deemed to have received any Package until the Package has physically been received by Wells Fargo and its contents verified by Wells Fargo at the address of which Wells Fargo notifies Correspondent from time to time; (v) Wells Fargo will not be liable for any fluctuation in foreign exchange rates or interest rates due to courier delays in transit of any Package; (vi) For any Package lost by Wells Fargo, Wells Fargo will only be liable for assisting Correspondent with reconstruction and further processing of documents contained in a lost Package.

### 6.2 Lost Checks

When Checks or Packages containing Checks are lost in transit the following provisions apply:

(i) If a cash letter shipment is lost in transit between Correspondent and the receiving center for Wells Fargo, Wells Fargo agrees to provide Correspondent with provisional credit within ten (10) Business Days after its receipt of two legible copies (front and back) of each of the Checks which were lost; (ii) Legible copies, properly indemnified, should be received by Wells Fargo not later than forty-five (45) calendar days after the original Check(s) was/were lost; (iii) Wells Fargo will then, for a period of six (6) months commencing on the date Correspondent's Account is provisionally credited, initiate an effort to collect on the copies of the original Checks; (iv) Correspondent will retain use of the full value of the Check(s) (subject to normal returns) during the six (6) month period; and (v) At the end of the six (6) month period, Wells Fargo will debit Correspondent's Account for the full value of any of the uncollected copies and will provide Correspondent with a list of all of the uncollected copies.

### 6.3 Lost Trade Documents or Items

When trade related Packages or trade related documents, including Items, are lost in transit, the following provisions apply: (i) if a shipment carrying letters of credit, documentary collections or export bill receivables, including any Items, is lost in transit between Correspondent and the issuing or paying bank, or between Correspondent and Wells Fargo, Wells Fargo agrees to assist Correspondent with replacement or reconstruction of such documents and/or Items; (ii) provided that Correspondent delivers front and back photocopies of documents and/or Items to Wells Fargo within the number of Business Days notified as necessary by Wells Fargo from receipt of notice of lost documents and/or Items, Wells Fargo will employ commercially reasonable efforts to recover all costs of obtaining replacement originals from the issuer(s), and to pass on any costs recovered to Correspondent; and (iii) upon receipt of reconstructed or replacement documents and/or Items, Wells Fargo will re-deliver such to the issuing or paying banks to enable Correspondent to obtain payment therefore.

# Part 7: Miscellaneous

## 7.1 Assignment of Terms & Conditions

These Terms & Conditions may be assigned by Wells Fargo at any time. Neither these Terms & Conditions nor any Account nor any Services provided pursuant to these Terms & Conditions may be assigned or transferred by Correspondent, except in connection with a merger and with prior written approval by Wells Fargo. An assignment or transfer by Correspondent will not affect Wells Fargo's rights and remedies under the Terms & Conditions, including Wells Fargo's right of termination or modification of all or any portion of the Services provided to Correspondent under the Terms & Conditions.

## 7.2 Conflicts/Disputes Involving the Account and Services

If Wells Fargo receives an actual or potential claim from a third party regarding Correspondent's Account, or conflicting instructions or claims from Authorized Representatives, Wells Fargo may, at Wells Fargo's discretion and without liability to Correspondent, choose not to disburse any funds from Correspondent's Account until Wells Fargo receives consistent instructions from all parties or a court order. Wells Fargo may without liability to Correspondent close the Account and issue a Check made payable to Correspondent, make an electronic transfer in favor of Correspondent or interplead the funds into court.

## 7.3 Setoff and Security Interest

If Correspondent acting in any capacity, including, without limitation, depositor, borrower, guarantor, judgment creditor or otherwise, including, without limitation, in connection with any payment or any other Obligation owed to a financial institution acquired by Wells Fargo, ever owes any Obligation to Wells Fargo or any Associate Bank, and it becomes due, Wells Fargo may Setoff and use and apply the funds from one or more of Correspondent's Account(s) to pay the Obligation without prior notice to or demand upon Correspondent. If the Obligation and the Account are in different currencies, Correspondent agrees that Wells Fargo may use the currency of the Account to purchase the currency of the Obligation at the then spot rate in order to Setoff. Wells Fargo may accelerate the maturity of any Account and may accelerate and/or treat any Obligation, including, without limitation, any contingent Obligation, as then immediately due and payable in order to maximize Wells Fargo's rights under any Setoff. Wells Fargo may use the Account to pay the Obligation even if the withdrawal results in an interest penalty or the dishonor of Checks or the rejection of electronic payment orders. In the case of Correspondent's head office and its branch(es), if any, maintaining Accounts with Wells Fargo, Correspondent agrees on behalf of its head office and all of its branches that Wells Fargo may use any Account to satisfy any of Correspondent's Obligations whether the Obligations are that of head office or a branch. Wells Fargo may restrict Correspondent's right to withdraw funds from any of Correspondent's Accounts, whether head office or any branch, in connection with Wells Fargo's exercise, or anticipated exercise, of its right of Setoff. Correspondent grants Wells Fargo and all Associate Banks a continuing charge, lien and security interest in and right of Setoff against all of Correspondent's right, title and interest in and to all Accounts and other deposits, accounts and investments with any Wells Fargo offices or any Associate Bank wherever located to secure payment of Correspondent's Obligations to Wells Fargo or to any Associate Bank acting in any capacity. The security interest and right of Setoff granted by these Terms & Conditions are consensual and are in addition to any other security interest or right of Setoff that Wells Fargo or any Associate Bank may have. Any pledge or assignment by Correspondent to third parties of Accounts for security purposes remains subject to Wells Fargo's and all Associate Banks' right of Setoff and security interest, which must take priority over any such grant of a security interest to a third party. To the extent any of the funds to be Setoff are entitled to any exemption from execution, levy, attachment, garnishment, seizure or other legal or equitable process, then, to the maximum extent allowed by Law, Correspondent hereby knowingly, affirmatively and unequivocally waives such exemption and consents to Wells Fargo's or any Associate Bank's Setoff against such funds as contemplated by these Terms & Conditions. All payments received by Setoff or by exercise of Wells Fargo's security interest may be applied first to Wells Fargo's fees, late charges, costs and expenses which Correspondent is obligated to pay pursuant to the terms hereof, then to accrued and unpaid interest on amounts outstanding and then to principal, or such payments may be applied in such other order as Wells Fargo in its sole discretion will determine. Wells Fargo may, in its sole discretion, reverse any Setoff previously effected and reinstate any of Correspondent's Obligations, including, without limitation, any overdraft, that was previously satisfied as a result of such Setoff. Any such reversal will have

retroactive effect as if the Setoff had not occurred, and all of Wells Fargo's rights and remedies under these Terms & Conditions and otherwise, including Wells Fargo's security interest, which will continue without interruption from the original date of creation in such funds, will remain in full force and effect.

### 7.4 Confidentiality

Each party agrees it will not disclose any information received from the other party and will employ all reasonable measures to avoid unauthorized disclosure of the other party's information in breach of these Terms & Conditions, consistent with the measures that the receiving party uses to protect its own most sensitive confidential information. Absent any agreement specifically to the contrary, Wells Fargo, its Associate Banks and their other affiliates reserve the right to exchange among themselves information about Correspondent and its Accounts, to disclose such information to subcontractors and agents, and to report any relevant information to credit reporting agencies. Wells Fargo may be required to disclose such information as required by legal and regulatory process or to prevent illegal or fraudulent activities. Wells Fargo endeavors to protect the privacy of personal information about individuals who are employees, officers and representatives of, or investors in, Correspondent (in this Section 7.4 on Confidentiality hereinafter referred to as "individuals"). A description of the types of data Wells Fargo may collect about Correspondent and the individuals, the purposes for which the data is collected, and how the data may be transferred, is available in the Privacy Notices. By accepting Services under these Terms & Conditions or by opening an Account, to the extent permitted by Law Correspondent consents on behalf of itself and the individuals to the terms of the applicable Privacy Notice, and represents to Wells Fargo that if under local Law a consent to share the personal information of any of the individuals is required, Correspondent has obtained same. By accepting Services under these Terms & Conditions or by opening an Account, Correspondent authorizes Wells Fargo to record telephone or other conversations between it by its individuals and Wells Fargo and has obtained the consent of Correspondent's individuals to record telephone or other conversations between Wells Fargo and any of the individuals. All decisions to record conversations, and to preserve or destroy such recordings, will be within Wells Fargo's sole discretion. Wells Fargo will incur no liability by reason of its recording or not recording such conversations, or preserving or destroying such recordings. The authority granted by this provision will survive the termination of these Terms & Conditions, termination of any Services or closing of an Account.

### 7.5 Enforcement of Electronic Instruments and Agreements

Neither party will contest the admissibility of documents or records simply because they are in electronic form, including, without limitation, in SWIFT message form. Each party also accepts that records and documents in non paper or electronic form, including, without limitation, in SWIFT message form, will have the same force as paper copies (if any), and that it will be legally bound by them as if in writing with original signature. Any Item, agreement, instrument or other document with Electronic Signature or under authenticated procedures or through a secure Wells Fargo web site or system will have the same force and effect as if it were bearing an original signature. As used in this Section: (i) The term "electronic" means relating to technology having electrical, digital, facsimile, magnetic, wireless, optical, electromagnetic, or similar capabilities; and (ii) The term "electronic record" means a contract or other record created, generated, sent, communicated, received, or stored by electronic means.

### 7.6 Termination

Correspondent or Wells Fargo may close any Account and terminate these Terms & Conditions, and unless otherwise provided specifically in writing, terminate any Service at any time without advance notice. Correspondent will receive any Available Balance in its Account within a reasonable period of time after it is closed; provided Wells Fargo has the right to Setoff any funds necessary to satisfy any outstanding Obligations of Correspondent to Wells Fargo or to any Associate Bank. In addition to Wells Fargo's right to return any Available Balance in Correspondent's Account after a reasonable time, Wells Fargo may require that Correspondent maintain a reasonable reserve amount in the Account or as security in order to satisfy any Obligation not yet due, including, without limitation, any chargeback to the Account which may occur after the Account is closed. Correspondent is liable for all returned Checks or other Items, drawee bank claims and all other Obligations due to Wells Fargo, even if Correspondent's Account is closed. Wells Fargo may return unpaid any Items presented on a closed Account. Rights and responsibilities, which by their nature would continue beyond the termination of these Terms &

Conditions, including the rights and responsibilities set forth in this Section will survive the termination of these Terms & Conditions, termination of any Services and closing of the Account. Upon termination of any Account, Services or these Terms & Conditions, Wells Fargo or any Associate Bank may accelerate any Obligations then owing to Wells Fargo hereunder or under any other instrument or agreement evidencing an Obligation of Correspondent to Wells Fargo or to an Associate Bank.

### 7.7 Applicable Laws, Rules, and Guidance

These Terms & Conditions will be governed by and construed in accordance with the Laws of the US and the State of New York, including (without limitation) Articles 3, 4, 4A and 5 of the Uniform Commercial Code, as amended by agreement between Wells Fargo and Correspondent, and New York CLS Dr & Cr § 151, which are all incorporated herein by reference and made a part hereof. Accounts which are inactive for a specified period of time may be subject to escheat under state Law. Accounts are subject to attachment, levy, seizure, and garnishment Law. Accounts and Services provided in connection with these Terms & Conditions are also governed by applicable rules of and Operating Circulars issued by the Board of Governors of the Federal Reserve System of the US, the rules of clearing houses and similar associations to which Wells Fargo may belong, funds transfer system rules, publications of organizations, including without limitation BAFT-IFSA, the Clearing House Association L.L.C. and the International Chamber of Commerce, and general US commercial bank practices applicable in connection with the Account and the Services.

### 7.8 Compliance with Law

Wells Fargo is a bank organized and existing under the Laws of the US, and intends to comply with all Laws of the US applicable to it in any of its locations, including without limitation the USA PATRIOT Act, the Trading with the Enemies Act, the International Emergency Powers Act, regulations of the United States Department of the Treasury and the Office of Foreign Assets Control, and in its foreign locations to comply with all applicable Laws of the host country. Correspondent acknowledges that Wells Fargo's compliance with Laws to which it is subject may affect the transactions Correspondent may conduct with, or through, Wells Fargo and may require that Correspondent provide or certify information to Wells Fargo about itself or any entity or class of entities transacting payments or other business through Correspondent's Account or through Correspondent's use of other Services.

**USA PATRIOT Act Notice:** To help the US government fight the funding of terrorism and money laundering activities, US Federal Law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.

### 7.9 Waiver of Jury Trial and Dispute Resolution

Correspondent hereby irrevocably submits to the jurisdiction of the courts of the Borough of Manhattan, New York City, in the State of New York, USA or the Federal courts located therein over any action or proceeding arising out of or relating to these Terms & Conditions and irrevocably agrees that all claims in respect of such action or proceeding may be heard or determined in such courts.

No legal proceeding may be commenced against Wells Fargo hereunder except in such foregoing New York located courts and unless Correspondent has given Wells Fargo timely notice as required in these Terms and Conditions and such legal proceeding is commenced within two years after the action or inaction giving rise to such claim occurred or the applicable statute of limitation, whichever is earlier.

Wells Fargo and Correspondent each knowingly, voluntarily and intentionally waive any right that they may have to a trial by jury in any litigation in any way based upon, arising out of or related to the Account, the Services, these Terms & Conditions, or the breach thereof, or any course of conduct or course of dealing by the parties related thereto. This provision is a material inducement to Wells Fargo to provide the Account and the Services referred to herein.

At Wells Fargo's request or its written agreement any controversy or claim arising out of or relating to the Account, Services, Terms & Conditions, or the breach thereof, must be submitted to arbitration administered by the International Centre for Dispute Resolution in accordance with its International Arbitration Rules before three (3) arbitrators if the amount in controversy is five (5) million Dollars or more or other currency equivalent, and to the extent permitted by the International Arbitration Rules, before one (1) arbitrator for amounts in controversy of less than five (5) million Dollars or other currency equivalent. The place of arbitration must be New York City, in the State of New York, USA and the language of the arbitration must be English.

At Wells Fargo's request or its written agreement, any disputes arising out of or in connection with products and Services that are delivered pursuant to or governed by rules or guidance published by the International Chamber of Commerce will be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said Rules. The place of arbitration must be New York, State of New York, USA and the language of the arbitration must be English.

Correspondent irrevocably consents to the service of process by personal delivery or overnight courier or registered or certified airmail, postage prepaid, of copies of the summons and complaint or other process (which must be in the English language) to Correspondent's address in Section 7.18 regarding notices or to Correspondent's agent for service of process in the USA. Nothing herein affects the right to serve process in any other manner permitted by Law or the International Arbitration Rules of the International Centre for Dispute Resolution.

### 7.10 Waiver of Notice of Dishonor

By using the Accounts and or any Service, Correspondent waives any requirement of notice of nonpayment, dishonor or protest regarding any Items credited to or charged against Correspondent's Account. For example, if an Item that Correspondent deposits is dishonored and returned to Wells Fargo, Wells Fargo may, but is not required to, notify Correspondent of the dishonor.

### 7.11 Invalidity of Contract Provisions

In the event any one or more of the provisions of these Terms & Conditions will for any reason, including under any applicable Law, be held to be invalid, illegal or unenforceable, the remaining provisions of these Terms & Conditions will remain in full force and effect.

### 7.12 Subcontractors

Correspondent acknowledges and agrees that Wells Fargo, in its sole discretion, may provide any Services through subcontractors and agents and additionally may process any transaction or provide any Service under these Terms & Conditions in any of its US or non-US locations or in any of its subcontractor or agent locations either within or outside the US. Wells Fargo will be entitled, in its sole discretion, to send any of Correspondent's information necessary to provide Services under the Terms & Conditions or any Service Description to any location or jurisdiction, whether to a Wells Fargo location or a subcontractor location, for processing, storage or other purpose under these Terms & Conditions or under any Service Description.

### 7.13 Indemnification

Correspondent agrees to indemnify, defend and hold Wells Fargo, its successors, assigns, correspondents, directors, officers, employees, subcontractors and agents harmless from and against any and all claims, losses, damages, liabilities and expenses of any nature, including legal expenses and attorneys fees: (i) suffered or incurred by Wells Fargo by reason of or pursuant to these Terms & Conditions, or the performance of Services hereunder; (ii) arising from any claim attributable to any act or omission taken by Wells Fargo based upon reliance on: (y) any individual indicated to be authorized to act on behalf of Correspondent in any document or communication provided by Correspondent to Wells Fargo (or otherwise authorized by Correspondent) or (z) any agreed upon message format; (iii) arising from any claim or demand based in whole or in part on an action or omission of Wells Fargo resulting from a request, direction, or instruction from Correspondent; (iv) breach by Correspondent of any provision in the Terms & Conditions or any Service Description; or (v) arising from a dispute involving Correspondent's Account or the Services. Correspondent's indemnity will not be effective to relieve Wells Fargo against claims and losses arising as a direct result of Wells Fargo's own gross negligence or willful misconduct.

If any sum due from Correspondent to Wells Fargo, or any order or judgment given or made in relation hereto or thereto, has to be converted from the currency (the "first currency") in which the same is payable hereunder or under such order or judgment into another currency (the "second currency") for the purpose of (i) making or filing a claim or proof against Correspondent, (ii) obtaining an order or judgment given in any court or other tribunal or (iii) enforcing any order or judgment given or made in relation hereto or thereto, Correspondent must indemnify and hold harmless Wells Fargo from and against any losses suffered as a result of any discrepancy between (y) the rate of exchange used to convert the sum in question from the first currency into the second currency and (z) the rate or rates of exchange at which Wells Fargo may in the ordinary course of business purchase the first currency

with the second currency upon receipt of a sum paid to it in satisfaction, in whole or in part, of any such order or judgment, claim or proof.

The indemnities provided in these Terms & Conditions will survive closing of any Account, termination of any Service, or termination of these Terms & Conditions.

### 7.14 Correspondent's Responsibility for Fees and Interest

In addition to any other liability of Correspondent to Wells Fargo under these Terms & Conditions or otherwise, Correspondent will be liable to Wells Fargo for all fees imposed on Wells Fargo or Correspondent by any third party related to any Services offered by Wells Fargo under these Terms & Conditions or any other agreement or arrangement between Wells Fargo and Correspondent. Such fees include, but are not limited to, intermediary bank fees, amendment fees and processing order fees.

If Correspondent fails to pay any amount when due pursuant to any extension of credit granted or in connection with Wells Fargo's delivery of any of the Services described in these Terms & Conditions, unless the parties otherwise agree in writing, Correspondent must pay interest on any overdue amount before and after judgment at a rate to be determined by Wells Fargo at its sole discretion.

### 7.15 Liability

Unless otherwise provided in these Terms & Conditions, Wells Fargo's liability, if any, will be limited to those actual damages which are the direct result of Wells Fargo's gross negligence or willful misconduct, which will be determined in accordance with the commercial standards of Wells Fargo's peers in the US banking industry and applicable Laws. Wells Fargo is not responsible for any claim arising from non-payment of any Item or for loss or delay in any clearing system unless it occurs as a direct result of gross negligence or willful misconduct by Wells Fargo. Damages with respect to electronic funds transfers will be limited to an amount equal to interest on the funds for each day the error or delay remains uncorrected at the applicable effective Federal Funds rate, i.e., the Federal Funds rates published by the Federal Reserve Bank of New York for each of the calendar days for which interest is payable divided by 360, reduced by a percentage equal to Wells Fargo's reserve requirement on the amount of the electronic funds transfer. Wells Fargo may at its sole discretion substitute in lieu of interest an "as of"

adjustment method of compensation, i.e., recompute Correspondent's balances for account analysis purposes as if the error or delay had not occurred. If Wells Fargo is unable to recover all or any part of funds it erroneously transferred from a transferee who has no claim to them, Wells Fargo's liability will not exceed the amount of funds which Wells Fargo is unable to recover plus interest as aforesaid. Wells Fargo will be subrogated to all rights of Correspondent against third parties and to any rights of a transferee against Correspondent in connection with any claim. In no event will Wells Fargo be liable regardless of whether any claim is based on contract or tort, for any punitive, consequential, special, or indirect losses or damages Correspondent may incur or suffer arising from or in connection with these Terms & Conditions or the provision of any Service, whether or not the likelihood or possibility of such losses or damages was known to Wells Fargo in advance. Wells Fargo will not be responsible for any loss or damage resulting from Acts of God, war, riots, terrorism, strikes, civil or industrial disturbance, malfunctions of equipment or other cause beyond Wells Fargo's control.

### 7.16. Waiver

Wells Fargo may waive any of these Terms & Conditions but any such waiver will apply only to the term or condition waived and only for that particular occasion and will not constitute a waiver of any other term or condition.

### 7.17 Correspondent's Representations, Warranties, Acknowledgments, Responsibilities, and Covenants

Correspondent represents and warrants to Wells Fargo now and each time that Correspondent uses any Service or Account that: (i) all information, including financial information, whenever provided by Correspondent to Wells Fargo, will be true, correct and complete, and all information relating to Correspondent's financial condition accurately reflects Correspondent's financial condition as of the date(s) thereof; (ii) Correspondent is not insolvent under the Law of Correspondent's Home Jurisdiction; (iii) Correspondent is in compliance with all federal, state and local Laws, including, all Laws of the US and any state thereof applicable to Correspondent's properties, operations, business and finances and with the Laws of its Home Jurisdiction; and Correspondent's acts or omissions will not cause Wells Fargo to violate any Laws; (iv) Correspondent is duly organized and in good standing under the Laws of Correspondent's Home Jurisdiction, and Correspondent has all powers, licenses, authorizations and approvals to operate Correspondent's business

as now conducted; (v) Correspondent will promptly notify Wells Fargo of the existence of any condition or event which may constitute a breach of or default under these Terms & Conditions; (vi) Correspondent will promptly notify Wells Fargo in writing of (x) any change in Correspondent's financial condition or business; (y) any change in Correspondent's name, address or business structure, ownership or organization; and (z) any material litigation or regulatory action affecting Correspondent; and (vii) upon Wells Fargo's request therefore, Correspondent will promptly deliver to Wells Fargo true and correct copies of Correspondent's annual report and such other information regarding Correspondent's business affairs and operations including, but not limited to, income statements, balance sheets and statements of cash flows.

Correspondent agrees that as long as it has an Account with Wells Fargo, uses any of the Services, or otherwise has an outstanding Obligation to Wells Fargo or any Associate Bank that Correspondent: (i) must maintain a know your customer and anti-money laundering/anti-terrorist financing program in accordance with the description of such program furnished to Wells Fargo by Correspondent from time to time; (ii) must take all lawful, commercially reasonable steps to prevent use of a Service or the Account by a Prohibited Entity, including where appropriate scanning against published lists; (iii) must not intentionally withhold, delete or misrepresent information about a transaction or message involving Wells Fargo in any capacity, which if known to Wells Fargo would alert it that the transaction or message involves a Prohibited Entity or would otherwise be unlawful for Wells Fargo to engage; (iv) must promptly, on Wells Fargo's request, supply to Wells Fargo any documentation, other evidence, or access to Correspondent's staff and books and records to enable Wells Fargo to carry out, and be satisfied with the results of, all due diligence requirements, investigative inquiries, and any other requirements in order to meet its obligations under applicable Laws; (v) must provide all required information in order to comply with Law, and international messaging standards and guidance, including without limitation those set forth from time to time by the Financial Action Task Force or the Basel Committee on Banking Supervision, or any successor organizations; and (vi) acknowledges and agrees that "restricted transactions" as defined in the Unlawful Internet Gambling Enforcement Act of 2006 and Regulation GG issued pursuant to that Act are prohibited from being processed through the Account or through Services provided by Wells Fargo and in the event Wells Fargo identifies a suspected restricted transaction, Wells Fargo may block or otherwise prevent or prohibit such transaction and in some circumstances may close the Account or terminate some or all Services.

### 7.18 Notice

Any notice to Correspondent will be deemed given when hand delivered or two (2) days after being sent via internationally recognized courier and addressed to Correspondent at the last address appearing on Wells Fargo's records, which Correspondent agrees that unless it notifies Wells Fargo in writing of a change of address Wells Fargo may rely on such address. Notice to Wells Fargo will be deemed given when hand delivered or two (2) days after being sent via internationally recognized courier addressed to Wells Fargo at 101 North Independence Mall East, Philadelphia, Pennsylvania 19106, USA, to the attention of International Customer Service, or such other address and party as Wells Fargo will notify Correspondent in writing. This Section will not be deemed to be an exclusive list of each means of notice from one party to the other, and specific sections in these Terms & Conditions that require notice by a given mode or in a given manner take priority for the subject matter found in the particular section.

### 7.19 Entire Terms & Conditions

These Terms & Conditions constitute Correspondent's and Wells Fargo's entire agreement and understanding with respect to the matters addressed herein and supersede all prior versions of the Terms and Conditions published by Wells Fargo or any predecessor. These Terms & Conditions may not be changed orally.

### 7.20 Headings

Headings are for ease of reference only.

## Definitions

The terms defined below, whether used in the singular or plural will have the meanings assigned:

**Account** — means, individually and collectively, Correspondent's Dollar denominated deposit or other account with Wells Fargo, including demand, money market, time, investment, certificate of deposit, and other account, including, without limitation a loan account.

**Amendment** — means an amendment to an Authorization subject to URR725.

**Associate Bank** — means any bank or other non personal entity, including, without limitation any facility, mutual fund, broker dealer or foreign financial institution which is owned or controlled, directly or indirectly, by Wells Fargo's ultimate banking holding company.

**Authorizations** — means authorizations to reimburse subject to URR725.

**Authorized Representative** — means any person duly authorized by, and who has authority to act for or to obligate Correspondent.

**Available Balance** — means the daily ending balance in Correspondent's Account after all debit and credit transactions have been posted, less the amount of any deposits that are in the process of collection.

**Business Day** — means a calendar day on which the Federal Reserve Bank of New York is open for business.

**Check** — means an order to pay which may, as examples, be (i) a draft other than a documentary draft, payable on demand and drawn on a bank or (ii) a cashier's check or teller's check. An instrument can be a Check even though it is described on its face by another term, such as money order or traveler's check.

**Check 21** — means the Check Clearing for the 21st Century Act, as amended from time to time.

**Claim or Claims** — means claim as defined in URR 725.

**Correspondent** — means each customer of Wells Fargo, including any legal entity to which Wells Fargo provides these Terms & Conditions and related Services or products, and applies to such entity, regardless of whether or not such entity holds an Account on Wells Fargo's books.

**Dollar** — means the then currency of the United States of America.

**Electronic Signature or Endorsement** — means an electronic sound, symbol, or process, attached to or logically associated with a contract or other record and executed or adopted by a person with the intent to sign the record and includes a facsimile, replica or words, mark or code whether by machine, stamp, electronic message, or otherwise that is meant as an indication that the person adopts the intentions recorded in the agreement, document, instrument, Item or other writing regardless of by whom or by what means the actual or purported signature or endorsement is affixed.

**Home Jurisdiction** — means the jurisdiction of Correspondent's organization and if Correspondent is a branch, also the jurisdiction in which it is licensed to operate.

**Item** — means an instrument or a promise or order to pay money handled by Wells Fargo for collection or payment and depending on the context in which it is used in these Terms & Conditions, a check, draft, negotiable instrument or other written order or instruction for debit of an Account and/or the payment of money.

**Law** — means any present or future law (including common or customary law), statute, constitution, policy, decree, judgment, treaty, regulation, directive, by-law, order or any other legislative measure of any government, government agency, supranational, local government, statutory or regulatory body or court; and a provision of Law is a reference to that provision as amended or re-enacted.

**Obligations** — means all advances to, and debts, liabilities, charges, fees, obligations, agreements, promises and covenants of Correspondent arising under any agreement, the Terms & Conditions, any Service Description or otherwise, whether direct or indirect (including those acquired by assumption), absolute or contingent, due or to become due, now existing or hereafter arising to Wells Fargo or any of its Associate Banks and including interest and fees that accrue after the commencement by or against Correspondent of any proceeding under any bankruptcy or insolvency Law naming such person as the debtor in such proceeding, regardless of whether such interest and fees are allowed claims in such proceeding.

**Package** — means physical documents or Items, including Checks, contained in bags or packages for delivery via mail or courier

**Privacy Notices** — means the privacy notices found at www.wellsfargo.com/privacy.

**Prohibited Entity** — means a particular country, individual, entity or class of individuals, or entities that Correspondent is notified by Wells Fargo to be a Prohibited Entity or is a Prohibited Entity under applicable Law.

**Relationship Manager** — means the Wells Fargo officer responsible for the relationship between Correspondent and Wells Fargo.

**Security Procedures** — means a procedure established by agreement between Correspondent and Wells Fargo for the purpose of verifying that a payment order, instruction or any other communication, including, without limitation, any communication amending or cancelling a payment order is that of Correspondent. A security procedure may require the use of algorithms or other codes, identifying words or numbers, encryption, callback procedures, or similar security devices. Comparison of a signature on a payment order, instruction, or other communication with an authorized specimen signature of the Correspondent is not by itself a security procedure. Part 3 of these Terms & Conditions sets forth the specific Security Procedures for SWIFT, telex or Web based systems agreed between Wells Fargo and Correspondent.

**Service Description** — means the relevant service descriptions and/or agreements that form an agreement between Wells Fargo and Correspondent and that evidence the specific terms and conditions for a Service or Services that Correspondent requests and that Wells Fargo elects to provide to Correspondent..

**Service** — means all services provided by Wells Fargo including, but not limited to, treasury services, depository services, letters of credit, loans and other financial accommodations unless otherwise indicated by Wells Fargo.

**Setoff** — means the right under Law or contract described in the Section of these Terms & Conditions, captioned Setoff and Security Interest, which includes the right to accelerate any Obligation owed by Correspondent or any Obligation owed to Correspondent in order to affect Setoff.

**Substitute Check** — means a paper reproduction of an original draft or check that: (i) contains an image of the front and back of the original check (the first paper check issued with respect to a particular payment transaction); (ii) bears a MICR line that, except as provided under applicable US Laws, contains all the information appearing on the MICR line of the original check at the time that the original check was issued and any additional information that was encoded on the original check's MICR line before an image of the original check was captured; (iii) conforms in paper stock, dimension, and otherwise with applicable US Laws; and (iv) Is suitable for automated processing in the same manner as the original check.

**Terms & Conditions** — means collectively, the Service Descriptions applicable to Correspondent and the agreements covered herein by these Terms & Conditions.

**UCP600** — means International Chamber of Commerce Publication Number 600, entitled: Uniform Customs and Practice for Documentary Credits, as amended from time to time and accepted by Wells Fargo for use.

**URC522** — means the International Chamber of Commerce Publication Number 522, entitled: Uniform Rules for Collections, or any subsequent revision or restatement thereof which may be adopted by the International Chamber of Commerce and accepted by Wells Fargo for use.

**URR725** — means International Chamber of Commerce Publication Number 725, entitled: Uniform Rules for Bank to Bank Reimbursements under Documentary Credits, or any subsequent revision or restatement thereof which may be adopted by the International Chamber of Commerce and accepted by Wells Fargo for use.

**US or USA** — means the United States of America.

**Uniform Commercial Code** — means the Uniform Commercial Code of the State of New York as amended from time to time.