UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
BANCO DEL AUSTRO, S.A.,

                Plaintiff,

         v.                                16-cv-00628 (LAK)

WELLS FARGO BANK, N.A.,

                Defendant.
------------------------------------------------------------ X

## [~~PROPOSED~~] JOINT PRETRIAL ORDER

The parties to the above-captioned action (the "Action") having conferred among themselves and with the Court pursuant to Fed. R. Civ. P. 16, the following statements, directions and agreements are adopted as the Pretrial Order herein.

### I.    NATURE OF THE CASE

**PLAINTIFF'S STATEMENT:**

Banco Del Austro, S.A. had a correspondent banking relationship with Wells Fargo Bank, N.A., in which Wells Fargo would process payment orders in U.S. dollars on behalf of Banco Del Austro. Under the parties' Correspondent Agreement, Wells Fargo, as the receiving bank, agreed that the "SWIFT Authentication procedures," and not any other part of the SWIFT User Handbook, would be the security procedure used to verify that a payment order sent using SWIFT was that of Banco Del Austro. In other words, the SWIFT Authentication procedures was the security procedure offered by Wells Fargo Bank to verify that a payment order sent using SWIFT was that of the customer, Banco Del Austro, and not a third party impersonating the customer, such as a hacker.

1

In January of 2015, Banco Del Austro suffered a breach of its computer system. Its computer system was hacked by some unknown third party who was then able to use the SWIFT Interface to send unauthorized payment orders pursuant to the SWIFT Authentication procedures. Unfortunately, the SWIFT Authentication procedures do not take into account at all the risk that a third party may steal a customer's identity by hacking into its computer system and then obtaining access to the SWIFT Interface. Indeed, as SWIFT warns its customers, it does not monitor or control the messages that users send through its system and recognizes that all decisions on the legitimacy of financial transactions under applicable regulations rest with the financial institution handling them. Thus, there was no security procedure in place to verify that a payment order was properly entered at the point of origination – Banco Del Austro's computer system – and thus was truly a payment order authorized by Banco Del Austro. As a result, over a period of nine days, Wells Fargo accepted and executed twelve unauthorized payment orders from Banco Del Austro's Correspondent Account totaling over twelve million dollars.

Since then Banco Del Austro has pursued a civil action in Hong Kong in attempts to recover the stolen funds. Banco Del Austro has also recovered approximately 1.9 million dollars in insurance proceeds. Still, approximately 5 million dollars remain unrecovered from the unauthorized payment orders Wells Fargo Bank executed in January 2015. Under Article 4-A of New York's Uniform Commercial Code, Wells Fargo is liable to BDA for accepting and executing the twelve unauthorized payment orders. *See* N.Y. U.C.C. § 4-A-202.

Pursuant to Article 4-A of the New York U.C.C., Wells Fargo was required: (1) to utilize a commercially reasonable security procedure that provides security against unauthorized payment orders, and (2) to accept payment orders in good faith and in compliance with reasonable commercial standards of fair dealing. *See* N.Y. U.C.C. § 4-A-202(2). In January

2015 Wells Fargo failed to do both, and as a result, Wells Fargo accepted and executed twelve fraudulent payment orders from Banco Del Austro's Correspondent Account. Thus under Article 4-A of the New York U.C.C., the receiving bank, here Wells Fargo, bears the risk of loss for executing the twelve payment orders that were not authorized by their customer Banco Del Austro. *See* N.Y. U.C.C. § 4-A-202.

Lastly, Wells Fargo is not entitled to indemnification from Banco Del Austro because there was no agreement between the parties to indemnify Wells Fargo for losses arising from disputes *between the parties*, rather only for disputes by third parties.

**DEFENDANT'S STATEMENT:**

Plaintiff Banco del Austro, S.A. ("BDA" or "Plaintiff") had a correspondent account relationship with Defendant Wells Fargo Bank, N.A. ("Wells Fargo Bank," or "Defendant") or its predecessors for at least ten years. In February 2011, the parties entered into a new account agreement governing their existing correspondent banking relationship (the "Correspondent Agreement"). Pursuant to the terms of the Correspondent Agreement, BDA agreed to utilize the SWIFT Network to submit payment order requests to Wells Fargo Bank to make payments to third-party beneficiaries on behalf of BDA's customers. The Correspondent Agreement specified that the security procedure for the sending of payment orders would be the SWIFT authentication procedures as set forth in the SWIFT User Handbook as amended from time to time. BDA agreed that the SWIFT security procedures were commercially reasonable in light of its "circumstances and the type, value and frequency of the payment orders [BDA] will request." BDA also agreed that any authenticated SWIFT message that Wells Fargo received was deemed authorized and that Wells Fargo could rely on any authenticated message, which meant that BDA bore the risk of its systems being hacked.

3

Between January 12, 2015 and January 21, 2015, Wells Fargo Bank received twelve authenticated payment messages from BDA's SWIFT terminal (the "Payment Orders"), requesting that Wells Fargo Bank wire payments totaling $12,172,762.41 to third-party beneficiaries located in Hong Kong, Dubai, Los Angeles, and New York. Since these were authenticated, as per the Correspondent Agreement, Wells Fargo processed the Payment Orders. Wells Fargo Bank processed the orders in good faith as it followed reasonable commercial standards of fair dealing and acted neither unfairly or dishonestly. Wells Fargo automatically processed verified and authenticated SWIFT messages from BDA's SWIFT terminal without knowledge that they contained allegedly fraudulent payment orders. BDA first informed Wells Fargo Bank on January 21, 2015 that certain of the Payment Orders were allegedly fraudulent and sent by hackers who had gained entry to BDA's computer network and SWIFT terminal. Wells Fargo Bank had already processed the Payment Orders before BDA gave Wells Fargo Bank such notice. This notice came after the last payment order had already been processed.

BDA now claims that Wells Fargo Bank is liable to BDA under Section 4-A of the New York Uniform Commercial Code for the entire outstanding balance of the Payment Orders because the Payment Orders were unauthorized, the SWIFT security procedures are commercially unreasonable, and Wells Fargo did not act in good faith in processing the Payment Orders. BDA's claim fails because under the Correspondent Agreement the Payment Orders were authorized, BDA is estopped from challenging the commercial reasonableness of SWIFT, and Wells Fargo acted in good faith in processing the Payment Orders. Moreover, notwithstanding the fact that BDA agreed in the Correspondent Agreement that SWIFT security procedures are commercially reasonable, SWIFT security procedures are widely recognized as

4

being the most secure method for transmitting payment orders and are used by virtually every bank to send and receive payment orders.

Not only does BDA's claim fail, BDA is also required under the Correspondent Agreement to reimburse Wells Fargo Bank for its attorneys' fees and costs. As set forth in Wells Fargo Bank's counterclaim against BDA (the "Counterclaim"), BDA agreed to indemnify Wells Fargo Bank for costs and attorneys' fees incurred by Wells Fargo Bank arising from: (i) "any claim" attributable to any act or omission taken by Wells Fargo in reliance on a message from BDA in an agreed-upon format such as SWIFT; (ii) a breach by BDA of "any provision" in the Correspondent Agreement; or (iii) "a dispute involving" BDA's account. Wells Fargo Bank is entitled to attorneys' fees and costs because this Action arises from: (i) Wells Fargo Bank's reliance on messages in the SWIFT payment order format agreed upon by SWIFT and BDA; (ii) BDA's breach of the Correspondent Agreement by failing to satisfy its obligation to "establish controls to protect Security Procedures from unauthorized disclosure," as evidenced by the fact that it allegedly allowed hackers to gain access to its SWIFT terminal and send authenticated SWIFT payment orders; and (iii) a dispute between BDA and Wells Fargo Bank involving the Correspondent Account.

Through Wells Fargo Bank's efforts, Wells Fargo Bank was able to recover and return to BDA a total of $2,313,556.98 from three of the Payment Orders. BDA through its own efforts, including through the initiation of litigation in Hong Kong and from an insurance policy held by BDA, was able to recover a further $5,625,937.79. As a result, to Wells Fargo Bank's knowledge, only $4,233,267.64 of the initial $12,172,762.41 remains outstanding.

Wells Fargo Bank seeks: (i) its attorneys' fees and costs incurred in connection with this Action as set forth in its Counterclaim; (ii) dismissal of Plaintiff's remaining claims with prejudice and all relief sought by Plaintiff from Defendant be denied; and (ii) such other relief that the Court deems just and proper.

## II.     JURY/NON-JURY

Both Plaintiff and Defendant waived the right to a jury trial, and there is no dispute as to whether the Action should be tried to a jury. The estimated length of the trial is four days.

## III.     STIPULATED FACTS

1. Banco del Austro, S.A. ("BDA") is a foreign bank incorporated and organized under the laws of Ecuador.

2. Wells Fargo Bank ("WFB" or "Wells Fargo Bank") is a national banking association with its main office located in South Dakota, pursuant to its articles of association.

3. WFB and BDA entered into a correspondent banking agreement in February 2011, which governed their correspondent banking relationship.

4. The correspondent banking relationship between WFB and BDA was governed by Wells Fargo Bank, N.A.'s Terms and Conditions for Global Financial Institutions (hereinafter, the "Correspondent Agreement").

5. The Correspondent Agreement governed the correspondent banking relationship between Wells Fargo Bank and BDA at the time of the 12 payment orders listed in paragraph 23 of the Complaint in January 2015.

6. The Correspondent Agreement is a standard agreement that is consistent with other agreements WFB has with its correspondent banks.

7. Between January 12, 2015 and January 21, 2015, BDA's computer system was used to send 12 payment orders to WFB through the SWIFT Network instructing it to make the transfers listed in paragraph 23 of the Complaint.

8. The 12 payment orders listed in paragraph 23 of the Complaint sent between January 12, 2015 and January 21, 2015 passed the SWIFT Authentication procedures.

9. WFB executed all 12 of the payment orders listed in paragraph 23 of the Complaint.

10. The payment orders requested that Wells Fargo Bank transfer a total of $12,172,762.41 to third-party beneficiaries.

11. On January 21, 2015, BDA reported to WFB that there were unauthorized debits from its Correspondent Account.

12. On February 18, 2015, WFB made a partial refund of the eighth payment order listed in paragraph 23 of the Complaint in the amount of US$1,486,230.22 made on January 14, 2015, by refunding the sum of US$958,700.27 to BDA.

13. By letter dated April 7, 2015, BDA requested that WFB refund the funds from the 12 payment orders listed in paragraph 23 of the Complaint to BDA's Correspondent Account that had not already been returned to BDA.

14. BDA initiated proceedings in Hong Kong against various recipients of some of the 12 payment orders listed in paragraph 23 of the Complaint in an effort to recover the funds from these payment orders.

15. As of September 28, 2017, BDA has recovered, through the initiation of litigation in Hong Kong, $3,675,937.79 in funds from the payment orders.

16. As of September 28, 2017, Wells Fargo Bank has returned $2,313,556.98 in funds to BDA from the following payment orders: (i) $958,700.27 from the eighth payment order listed in the chart included in Paragraph 23 of the Complaint; (ii) $1,056,675.56 from the ninth payment order listed in the chart included in Paragraph 23 of the Complaint; and (iii) $298,181.15 of the tenth payment order listed in the chart included in Paragraph 23 of the Complaint.

## IV.  EXHIBITS

No exhibit not listed below may be used at trial except (a) for cross-examination purposes, (b) by plaintiff on rebuttal, or (c) if good cause for its exclusion from the pretrial order is shown.

### IV-A.  PLAINTIFF'S EXHIBITS

Plaintiff's Exhibit List is attached hereto as **Exhibit A**. Plaintiff also reserves the right to use any exhibits on Defendant's Exhibit List.

### IV-B.  DEFENDANT'S EXHIBITS

Defendant's Exhibit List is attached hereto as **Exhibit B**. Defendant also reserves the right to use any exhibits on Plaintiff's Exhibit List.

## V. GENERAL PROVISIONS, STIPULATIONS AND OBJECTIONS WITH RESPECT TO EXHIBITS

**Stipulations**

1. For purposes of Federal Rule of Evidence 901, Plaintiff and Defendant stipulate to the authenticity of Plaintiff's and Defendant's documents produced from the parties' own files.

**Objections to Exhibits**

1. Plaintiff's objections to Defendant's Exhibit List are incorporated into **Exhibit B**.

2. Defendant's objections to Plaintiff's Exhibit List are incorporated into the attached **Exhibit A**.

## VI. WITNESS LISTS

The witnesses listed below may be called at trial. No witness not identified herein shall be permitted to testify on either party's case in chief absent good cause shown.

### VI-A. PLAINTIFF'S WITNESS LIST[1]

Plaintiff's Witness List and deposition designations are attached hereto as **Exhibit C**. Plaintiff's objections to Defendant's deposition designations are incorporated into the attached **Exhibit D**.

### VI-B. DEFENDANT'S WITNESS LIST[2]

Defendant's Witness List and deposition designations are attached hereto as **Exhibit D**. Defendant's objections to the deposition testimony designated by Plaintiff and the basis therefore

---

[1] Plaintiff reserves the right to call any witness on Defendant's Witness List.
[2] Defendant reserves the right to call any witness listed on Plaintiff's Witness List.

9

is incorporated into **Exhibit C**. Defendant objects to the inclusion of any witnesses on Plaintiff's Witness List who cannot be compelled to appear at trial.

## VII. RELIEF SOUGHT

Plaintiff, Banco Del Austro, seeks damages in the form of a refund of the net amount of the unauthorized payment orders, plus interest on the refundable amount pursuant to Article 4-A of the New York Uniform Commercial Code. *See* N.Y. U.C.C. § 4-A-204(1). Accordingly, Banco Del Austro's damages represents the net unrecovered amount of the unauthorized payment orders together with the costs and fees related to Banco Del Austro's efforts to recover the unauthorized payment orders. Banco Del Austro's seeks damages totaling: USD $5,073,058.64, plus interest in accordance with Section 204(1) of the New York Uniform Commercial Code. *See* N.Y. U.C.C. § 4-A-204(1).

Defendant seeks: (i) its attorneys' fees and costs incurred in connection with this Action as set forth in its Counterclaim; (ii) dismissal of Plaintiff's remaining claims with prejudice and all relief sought by Plaintiff from Defendant be denied; and (ii) such other relief that the Court deems just and proper.

SO ORDERED

_____
LEWIS A. KAPLAN, USDJ

10/19/17